

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

151 West Seventh Avenue, Suite 300
Post Office Box 1335
Eugene, Oregon 97440

(541) 465-6802
FAX: (541) 465-6899

September 14, 2006

Mr. Wilson C. Muhlheim
Muhlheim Boyd
88 East Broadway
Eugene, OR 97401

Mr. Lee A. Mills
201 West Main, #5A
Medford, OR 97501

RE: TAN, LIE HUNG & MOUNTAIN STATES INVESTMENTS, LLC
Bankruptcy Case No. 04-61694-aer11

Dear Messrs. Muhlheim & Mills:

This matter comes before the court on the Chapter 11 Trustee's (Trustee) objection to Proof of Claim #10, filed by the Mayes Family Trust (Mayes). Although the claim is for over $260,000, because of various sales in which Mayes has been paid, the only amounts in dispute are $18,915 allegedly secured by property in Grants Pass, Oregon known as "the Granite Hill property," and $138,430 allegedly secured by property in Beatty, Oregon, known as "the Yellowjacket/Beatty property." The amount of the claims is not disputed. At issue, is whether or not Mayes' claims are secured.

Facts:

The essential facts are not in dispute; they are as follows:

Granite Hill property:

On or about February 11, 1994, Thomas E. Jones signed a promissory note promising to pay Mayes $30,000 (Jones Note). Also, on or about February 11, 1994, Jones gave Mayes a deed of trust on the Granite Hill property (Jones Trust Deed) to secure the Jones Note. The Jones Trust Deed was recorded in the real property records of Josephine County on February 14, 1994. Jones defaulted on the Jones Note for failure to pay $30,000, due on February 14, 1996.

On or about April 21, 1997, Mayes sold the Jones Note to Debtor. To memorialize the transaction, the parties entered into an Assignment Agreement (1997 Assignment). As

consideration for the 1997 Assignment, Debtor agreed to pay $31,157.16, $1,157.16 upon execution of the assignment, with the balance of $30,000, with accrued interest at 12% per annum, due on April 18, 1999.

Section 1 of the 1997 Assignment states "Assignor (Mayes) assigns, transfers, and conveys all their right title and interest in the [Jones] Note and Trust Deed to Assignee (Debtor) except as set forth below in Section 3." (Parenthesis added).

Section 3 provides, in pertinent part:

> Assignor hereby retains a security interest in the Trust Deed to secure performance of this agreement and payment by the Assignee of the balance of the consideration. Said security interest shall entitle Assignor to foreclose against Assignee by judicial foreclosure or by advertisement and sale under ORS Chapter 86, in the event of a default by Assignee as set forth herein. Upon payment of the purchase price in full by Assignee to Assignor, Assignor shall execute any documents necessary to terminate and/or extinguish its security interest herein, . . .

The 1997 Assignment contains a standard integration clause. It was recorded in the Josephine County real property records on or about April 24, 1997.

In May, 1997, Debtor commenced foreclosure proceedings against the Jones Note and Trust Deed without notice to Mayes. In October, 1997, Debtor obtained a Trustee's Deed for the Granite Hill property. Subsequently, Debtor failed to pay Mayes the $30,000 plus interest due on April 18, 1999. On January 8, 2002 Debtor and Mayes entered into an agreement to extend the due date to January 8, 2007. Debtor then defaulted on agreements with Mayes involving different properties. Pursuant to a settlement agreement between Mayes and Debtor, executed in March, 2003, Debtor became obligated to make $500 per month payments, which she made until February, 2004 and then defaulted.

At no material time did Mayes retain possession of the Jones Note and Trust Deed, nor did she file a UCC financing statement with the Oregon Secretary of State's office.

Yellowjacket/Beatty Property

On or about May 10, 1999, Jackie V. Donovan signed a promissory note promising to pay Rheta J. Stearns, $109,000 (Donovan Note). In addition, on or about May 10, 1999, Donovan gave Stearns a deed of trust on the Yellowjacket/Beatty property (Donovan Trust Deed), to secure the Donovan Note.[1] On or about November 24, 1999, an assignment of trust deed was recorded in the real property records of Klamath County, Oregon, transferring Stearns' interest in the Donovan Note and Trust Deed to Mayes.

---

[1] Although the record does not specifically indicate it, the Court presumes the Donovan Trust Deed was duly recorded in the real property records of Klamath County, Oregon.

On or about September 6, 2000, an Assignment Agreement was executed by Mayes transferring Mayes' interest in the Donovan Note and Trust Deed to Debtor. (2000 Assignment). The 2000 Assignment was recorded on September 12, 2000, in the Klamath County real property records. In the 2000 Assignment, Debtor agreed to pay $111,452.50 for the Donovan Note and Trust Deed. She paid $2,542.50 cash with the balance paid per "assumption" of the Donovan Note. Under this "assumption," Debtor's obligation to Mayes would be the same as Donovan's obligation under the Donovan Note, which was interest-only (9% per annum) payments of $817.50 per month, with the $109,000 principal due on May 17, 2009. Sections ##1 and 3 of the 2000 Assignment contain language identical to that found in the 1997 Assignment quoted above. It likewise had an identical integration clause.

In October, 2000, Debtor commenced foreclosure proceedings against the Donovan Note and Trust Deed. Debtor received a Trustee's Deed in March, 2001.

Pursuant to the March, 2003 settlement agreement referenced above, Debtor's monthly payments to Mayes under the 2000 Assignment were suspended until September, 2003. In the settlement agreement, Debtor agreed to list and sell the Yellowjacket/Beatty property (as well as others) as promptly as possible to satisfy her obligations. Debtor ultimately defaulted on the interest-only payments due to Mayes. At no material time did Mayes retain possession of the Donovan Note and Trust Deed, nor did she file a UCC financing statement with the Oregon Secretary of State's office.

Debtor filed her Chapter 7 petition, herein, on March 9, 2004. The case was subsequently converted to Chapter 11 on September 17, 2004. On June 22, 2005, Kim Short was appointed Ch. 11 Trustee on a permanent basis.

Discussion:

The issue is whether Mayes is secured in the subject parcels of real property. Mayes argues that while she sold the Jones and Donovan Notes to Debtor under the 1997 and 2000 Assignments respectively, the accompanying Trust Deeds were held back until she was paid in full. She retained the right to foreclose the Trust Deeds if Debtor defaulted to her under the Assignments. Mayes characterizes this as a "partial assignment" to which the UCC does not apply. She argues the term "security interest" in Section 3 of the Assignments does not mean an Article 9 security interest, but rather expressed the parties' intent that Mayes would retain the right to foreclose the Trust Deeds until Debtor paid Mayes in full. Since she wasn't paid, Debtor never had the right to foreclose the two Trust Deeds thus, her foreclosures were wrongful.

Even assuming that Mayes is correct as to what was intended in the 1997 and 2000 assignments, Mayes was left with nothing but a naked lien on the properties. The Trust Deeds provide no rights without rights in the underlying debt, here, the Notes, which Mayes sold to Debtor. As noted, Mayes did not retain possession of the notes or file a UCC Financing Statement. See, Futrell v. Wagner, 96 Or. App. 27, 771 P.2d 292 (1989) (assignment of security interest without assignment of debt that it secures yields assignee nothing). Assuming, arguendo, that Mayes' retention of the Trust Deeds affords her standing to maintain a "wrongful foreclosure" action against Debtor, she provides no authority that such an action equates to a secured claim against the subject properties.

Based on the above, Trustee's objection is sustained. The claims will be allowed as general unsecured. An appropriate order will be entered.

This opinion constitutes the court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

Very truly yours,

*albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge

AER:vhd

cc: Ms Gail Geiger, Assist. U. S. Trustee