

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**　　　　405 East Eighth Avenue, Suite 2600　　　　(541) 431-4050
Virginia H. Denney, Judicial Assistant　　　　Eugene, Oregon 97401　　　　FAX: (541) 431-4047
Howard J. Newman, Law Clerk

November 8, 2007

Mr. Loren Scott
Muhlheim Boyd, LLP
88 East Broadway
Eugene, OR 97401

Ms Lie Foen Tan
3290 Ford Drive
Medford, OR 97504

RE:　　TAN, Lie Hung & MOUNTAIN STATES INVESTMENTS, LLC
　　　　Case No. 04-61694-aer11
　　　　Trustee's Objection to Lie Foen Tan's Administrative Expense Claim

Dear Ms Tan & Mr. Scott:

　　　　As you are both aware, after the September 10-12, 2007 hearing, I took under advisement Lie Foen Tan's **(LFT)** administrative expense claim **(the claim)** for reimbursement of payments to the holder of a trust deed on real property located at 264 West Gregory St., Central Point, Oregon **(the property)**.[1] This letter is intended to announce my findings of fact and conclusions of law on that matter.

　　　　Facts:

　　　　Debtor Lie Hung Tan **(Debtor)** filed her Chapter 7 petition on March 9, 2004. The case was converted to Chapter 11 on September 17, 2004. LFT is Debtor's sister. After an interim appointment, on June 22, 2005, Kim Short was appointed Chapter 11 Trustee **(Trustee)** on a permanent basis.

　　　　Situated on the property is a three (3) bedroom 1428 square foot house and a 924 square foot manufactured home, which the parties referred to as the "trailer." At all material times the house was vacant, while the trailer was occupied by a tenant obtained by LFT. The tenant paid $600 per month in rent to LFT.

---

[1] The claim was for $68,536, which included $31,900 paid to the lienholder on the property. The balance was for mortgage and other payments on the Ford Drive property in Medford. At the September hearing, I ruled LFT's claim for reimbursement of the Ford Drive payments should be disallowed.

On July 28, 2005, Trustee filed adversary proceeding #05-6185-aer against LFT and others, alleging Debtor had used aliases and taken title to various parcels of real property in names other than her own, such as LFT's. Trustee sought a declaration that the property (amongst others) was property of Debtor's Chapter 11 estate.

On January 9, 2006, an order was entered in the adversary proceeding approving a settlement declaring that the estate owned the property free and clear of any claims of LFT and that upon its sale, the entire net proceeds would be held by the estate for distribution to creditors.

Trustee's Second Amended Plan (**Plan**) dated June 14, 2006, was confirmed August 30, 2006 (nunc pro tunc August 17, 2006), with amendments in the confirmation order. The Plan is a liquidation plan which sets up a liquidation trust, with Mr. Short as liquidation trustee. Under the Plan, the Chapter 11 estate assets were transferred to the liquidation trust. Trust assets are to be liquidated and distributed to creditors in the order and priority set out in 11 U.S.C. § 726,[2] until all creditors are paid in full, at which time any remaining assets are to be abandoned to Debtor.

In and around October, 2006, Trustee listed the property for sale. In mid-November, 2006, his counsel communicated with LFT's former attorney as to the status of the rent payments LFT had received from the trailer's tenant. At some point in late December, 2006, or early January, 2007, Trustee initiated an FED action in state court against the trailer's tenant and was successful in evicting her.

On March 7, 2007, Trustee filed an amended notice/motion to sell the property. No objections were filed. On April 6, 2007, an order was entered granting the motion, allowing the sale of the property to a third party for $290,000. The sale closed on April 11, 2007.

Up until the sale, LFT made payments to the lienholder on the property.[3] The payments were made on or about the 14th of each month. As of the date of the sale, the payments were current. On July 19, 2007, LFT filed the current request for an administrative expense claim.

Discussion:

The claim seeks reimbursement of $31,900 in payments to the lienholder on the property between the date Trustee was appointed and the sale. Trustee in his written opposition argued the claim was untimely. At hearing, however, he did not press this defense and I consider it waived. Even if not waived, I will nevertheless consider the claim on the merits for the reasons below.

The Plan's § 2.1.1 provides for full payment of "Allowed Administrative Claims" on the later of the "Effective Date"[4] or the entry of an order approving such claim. The Plan's § 10 defines

---

[2] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

[3] The cancelled checks validating the payments note "Washington Mutual Home Loans" as the lienholder. The Plan and Motion to Sell identify the lienholder as "Quantum Servicing Corp."

[4] "Effective Date" as defined in the Plan's ¶ 10 is the first business day at least forty-five (45) days after entry of the confirmation order.

"Administrative Claim" as "any Claim arising on or after the "Filing Date"[5] under Sections 503(b) . . ., including, without limitation, (a) any actual and necessary costs and expenses of preserving the estates of the Debtor . . . ." Section 10 goes on to define "Allowed Administrative Claim," and in so doing provides that:

> [E]ach holder of an Administrative Claim which (a) arises prior to the Effective Date, but (b) does not arise out of or relate to goods or services . . . provided to the Debtor subsequent to the Filing Date in the ordinary course of business, must file a request for payment on or before the date that is 30 days after the Confirmation Date <u>or such other limitations fixed by the Bankruptcy Court</u> and thereafter obtain an order approving such claim, in order to be considered an allowed Administrative Claim. (emphasis added).

As noted, under the Plan, the claims deadline only applies to claims arising before the Effective Date. Therefore, LFT's post-Effective Date payments are not covered by any limitations period. Even as to pre-Effective Date payments, the Plan allows, as an alternative deadline, "such other limitations fixed by the Bankruptcy Court." I construe LFT's present claim as requesting "such other limitation."

In setting "such other limitation" in the matter at bar, I am guided by the Supreme Court's equitable principles for enlarging time to file claims in Chapter 11 cases.[6] Here, Trustee has shown no prejudice by the delay: No disgorgement from other creditors is necessary; trustee has not argued evidence has been lost or is otherwise unavailable because of the delay; and adjudication of the claim has not delayed the liquidation trust's administration, as evidenced by the many other matters heard at the September, 2007 hearing, as well as matters presently set to be heard in December, 2007. I also find no "bad faith" on LFT's part. At most, there was a misunderstanding as to how to deal with the property. The claim is thus timely.

On the merits, my first task is to determine what the agreement was between the parties. LFT claims Trustee agreed to reimburse her for the trust deed payments without offsets. Trustee maintains LFT agreed to make the payments in exchange for the use of the property, in lieu of rent, while waiving any claim to reimbursement. There is no writing. I have listened carefully to the testimony. I find LFT has not met her burden of proving Trustee agreed to reimburse her for the payments. I also find that Trustee has failed to prove a rental agreement existed. In fact, I find no agreement existed at all, that is, there was no "meeting of the minds" on the reimbursement issue.

---

[5] The Plan's § 10 defines "Filing Date" as March 9, 2004 (i.e. the Chapter 7 filing date).

[6] <u>See</u>, <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). The enumerated <u>Pioneer</u> factors are: 1) the danger of prejudice to the opposing party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted in good faith. <u>Id.</u> at 395, 113 S. Ct. at 1498. I am at liberty to weigh the factors. <u>Pincay v. Andrews</u>, 389 F.3d 853, 860 (9th Cir. 2004), <u>cert. den.</u>, 544 U.S. 961, 125 S.Ct. 1726, 161 L.Ed.2d 602 (2005).

Ms Tan & Mr. Scott
November 8, 2007
Page-4

      Alternatively, LFT argues that each payment, beginning with Trustee's appointment through sale, benefitted the estate, and is thus reimbursable.[7] Trustee argues that any benefit should be offset by the property's fair rental value.

      First, I must concern myself with the relevant time period for computing both benefits and offsets. I begin with the order of January 9, 2006, in the adversary proceeding, which was entered as a result of a settlement. That order declared the estate's ownership of the property and made no provision for any reimbursement to LFT or payments due to Trustee. This order appears to settle the respective rights and liabilities of the parties as of the date of its entry, I consider it the law of the case.

      After January 9, 2006, through the date of sale, LFT made fifteen (15) payments to the lienholder of $1,464.13 each, for a total of $21,961.95. In his closing argument, Trustee's counsel as much as conceded these payments benefitted both the Chapter 11 and liquidation trust estates.

      As to offsets, Trustee has the burden of proof. I agree that all rents collected from the trailer's tenant should be offset. The evidence leads to a reasonable inference that such rent was collected through mid-November, 2006.[8] I will also indulge in the inference that rent was due and paid on and around the first of each month, as is typical of month to month tenancies. Therefore "trailer" rent totaling $6,000 may be offset. As to the house, it was vacant during the relevant time. Neither party attempted to rent it out. As there was no agreement between the parties, Trustee had the ability to control the house and elected, perhaps on a mistaken assumption, not to pursue its rental. Accordingly, I will not allow any offset for the rental value of the house.

      Based on the above, LFT's administrative expense claim will be allowed for $15,961.95. An order consistent herewith will be entered.

                            Very truly yours,

                            ALBERT E. RADCLIFFE
                            Bankruptcy Judge

---

[7] Section 503(b) provides the authority for pre-Effective Date payments. Principles of unjust enrichment provide the authority for post-Effective Date payments. Winters v. County of Clatsop, 210 Or. App. 417, 421, 150 P.3d 1104, 1106 (2007) ("to establish unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it."(internal citations omitted)).

[8] As of mid-November, 2006, Trustee had listed the property, was gearing up for sale, and was aware of the tenant's existence. It is reasonable to infer that thereafter either no rent was collected (especially given that Trustee commenced an FED in late December, 2006, or early January, 2007), or if collected, rent was paid to Trustee.

Ms Tan & Mr. Scott
November 8, 2007
Page-5

AER:vhd

cc:	Lie Hung Tan, Debtor
	Mr. Ronald C. Becker, Attorney for U.S. Trustee