

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

405 East Eighth Avenue, Suite 2600
Eugene, Oregon 97401

(541) 431-4050
FAX: (541) 431-4047

March 20, 2009

Ms Lie Hung Tan
3264 Ford Drive
Medford, OR 97504

Mr. David B. Mills
226 West 8th Avenue, #280
Eugene, OR 97401

Ms Candace Amborn
PO Box 580
Medford, OR 97501

Mr. Loren Scott
88 East Broadway
Eugene, OR 97401

Mr. Kim Short
425 West 3rd Avenue
Eugene, OR 97401

Mr. G. Jefferson Campbell, Jr.
PO Box 296
Medford, OR 97501

Mr. Ronald C. Becker
405 East 8th Avenue, Suite 1100
Eugene, OR 97401

Mr. Earl Dorman
1500 Valley River Drive, #250
Eugene, OR 97401

Mr. Stephen Behrends
PO Box 10552
Eugene, OR 97440

Mr. Wesley McNamara
620 SW Main Street, #312
Portland, OR 97205

Internal Revenue Service
Insolvency Group
4330 Watt Avenue SA5357
North Highlands, CA 95660

RE: TAN, LIE HUNG & MOUNTAIN STATES INVESTMENTS, LLC
Case No. 04-61694-aer11
Objections to Final Account, Fees and Related Motions to Disgorge

Dear Counsel and Parties:

This letter is intended to address the matters remaining after the hearing on February 5, 2009. The parties are well aware of this case's background. As such, only a brief recitation is in order.

Debtor filed a pro se Chapter 7 petition on March 9, 2004. Candace Amborn was appointed Chapter 7 Trustee. After court authorization, she employed David Mills as general counsel for the estate. She then filed Adversary Proceeding # 04-6183-fra to deny Debtor her discharge under various subsections of 11 U.S.C. § 727.[1] Debtor did not timely answer the adversary complaint and was denied her discharge by default judgment entered August 18, 2004. On September 17, 2004, the main case was converted to one under Chapter 11 on Debtor's motion. Debtor (then "In Possession") obtained court approval to employ the law firm of Behrends, Swingdoff, Haines & Critchlow (**BSHC**).

In June, 2005, the United States Trustee (**UST**) moved to have a Chapter 11 trustee appointed. An order was entered on June 10, 2005, appointing R. Kim Short as Chapter 11 Trustee on an interim basis. After hearing, on June 22, 2005, an order was entered making Mr. Short's appointment permanent. With court authorization, the Chapter 11 Trustee employed the law firm of Muhlheim Boyd LLP (**MB**) as general counsel, and Earl Dorman as accountant.

The estate mainly consisted of parcels of real property in southern Oregon. The Trustee began selling off properties, while at the same time investigating Debtor's pre and post-petition transfers, as well as the activities of insiders. In mid-March, 2006, on the Trustee's motion and after hearing, an order was entered substantively consolidating the Debtor's estate with that of a related entity, Mountain States Investments, LLC.

The Chapter 11 Trustee's Second Amended Plan (**the Plan**) dated June 14, 2006, was confirmed on August 30, 2006, with confirmation effective August 17, 2006. The Plan provided for a Liquidation Trust (**the Trust**), with Mr. Short acting as Liquidating Trustee. Asset sales were to continue until there were sufficient proceeds to pay all allowed claims in full, after which any remaining assets would be abandoned. The sale proceeds were to be periodically distributed as the Liquidating Trustee reasonably deemed appropriate in the priority set out by Chapter 7 of the Bankruptcy Code. The Plan set deadlines for asset sales and terminating the Trust. The Plan and confirmation order both preserved the effect of the previous denial of Debtor's discharge. Under the Plan, the Liquidating Trustee was entitled to retain professionals to help him administer the Trust. The Liquidating Trustee employed MB as the Trust's general counsel and Mr. Dorman as its accountant.

The Liquidating Trustee moved successfully to extend the Plan's sale and termination deadlines, with those deadlines ultimately extended to May 20, 2008 and August 29, 2008, respectively. In May, 2008, I denied the Liquidating Trustee's motion to shorten the Plan's notice period for an auction. This effectively put an end to the liquidation of the Trust's assets.

After several contested matters were resolved, on November 3, 2008, the Liquidating Trustee filed and noticed his Final Report. The Report sets out the various administrative expenses paid and to be paid, going back to the case's origin in Chapter 7. It indicates that allowed general unsecured claimants have received an approximate 22% dividend so far. Also on November 3rd MB filed a Third and Final Supplemental Application for Final Compensation and Mr. Dorman filed a Second and Final Supplemental Application for Final Compensation.

---

[1] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code as it existed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (2005)(effective for cases commenced on or after October 17, 2005).

All of these filings triggered a flurry of objections, responses and motions, including Debtor's request for discharge and objection to the Jacobs' claim, which were respectively denied and overruled at the February 5th hearing. The remaining matters involve objections to and requests for disgorgement of compensation.

Discussion:

The main issue addressed in this letter concerns the extent to which prior fee awards are subject to review and disgorgement.[2] The Jacobs, Debtor and her sister, Lie F. Tan, argue all prior awards are "interim," thus reviewable. The Liquidating Trustee and his counsel maintain that except for BSHC's fees, all prior awards are final and non-reviewable.[3] In light of these arguments, I will briefly discuss the procedures for compensating professionals in effect when the subject applications were pending.

Section 327 allows bankruptcy trustees (including Chapter 11 debtors in possession) to employ certain professionals with court approval, to assist in administering the estate. In order to avoid the hardship of financing their fees for the case's entire duration, § 331 allows professionals to apply for periodic "interim" compensation. <u>Leichty v. Neary (In re Strand)</u>, 375 F.3d 854, 858 (9th Cir. 2004). When professionals conclude their services for the estate they apply for "final" compensation. This final application takes in all previous services. Interim fee awards are interlocutory and may be reviewed at the time a final application is considered. <u>Neary</u>, <u>supra</u>. Indeed, by statute, final fee awards are reduced by the amount of interim awards and to the extent the interim awards exceed the final award, the court may order disgorgement of the excess. § 330(a)(5). On the other hand, orders on "final" applications are only subject to modification in the sense that any other final order is reviewable (e.g. by direct appeal, Rule 60 motion to set aside, etc). <u>See, e.g.</u>, <u>Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In Re Lakeshore Village Resort, Ltd.)</u>, 81 F.3d 103, 105 (9th Cir. 1996) (bankruptcy court's order denying final fee application is "final" for purposes of appeal to district court). To the extent it addresses the subject, a confirmed Chapter 11 plan may also govern fee awards.[4]

---

[2] Aside from professionals' fees, the Jacobs seek disgorgement from Debtor's sister, Lie F. Tan. Ms Tan filed an administrative claim for reimbursement of mortgage payments made to protect estate property. The Liquidating Trustee objected. After a hearing in September, 2007, I entered a letter opinion and order on November 8, 2007, allowing the claim for $15,961.95 as an administrative expense. That order is final. It is not subject to review and the amount paid thereunder is not subject to disgorgement.

[3] In considering "interim" vs. "final" fee issues, I am mindful of my own Order to Show Cause entered last July as to why MB and/or Mr. Short should not disgorge certain fees relating to real property sales. In response thereto, MB and Mr. Short raised the same "final fee" arguments. Ultimately I did not rule on that issue as no disgorgement was ordered for other reasons. See Ruling announced at September 4, 2008, hearing and Order entered September 19, 2008.

[4] Under § 1141(a), the terms of a confirmed plan bind the parties.

At the material times, the form, content and procedures governing compensation applications for pre-confirmation services were set out in FRBP 2016 and LBR 2016-1.[5] In Chapter 11, interim reports on Local Bankruptcy Form (LBF) #1153 and notices to parties in interest on LBF #753.40 were to accompany interim fee applications. LBRs 2016-1.B.3.a and 2016-1.B.1.b. Only one interim application per trimester was permitted. LBR 2016-1.B.1.a. Applications were considered "final" unless clearly marked "Interim" in the caption. LBR 2016-1.B.2. To be timely, "final" applications for services through plan confirmation, must have been filed no later than 30 days after the final confirmation hearing. LBR 2016-1.D.2. Notice of "final" applications were to be included in the notice of order confirming the plan, sent to all parties in interest on LBF #1190. LBRs 2016-1.D.4 and 3020-1.B.2. Parties in interest had 20 days from service of the notice to object thereto.[6] If the final application was not timely filed, the applicant was required to send out his own notice. LBR 2016-1.D.3.

In Chapter 11, unless the plan provides otherwise, the entity emerging from confirmation is distinct from the pre-confirmation estate. Most times the post-confirmation entity is the "reorganized debtor." § 1141(b). Here, however, that entity is the Trust. The Plan provisions relating to compensation provide:

> Section 4.3-Trustee Compensation
>
> > The Chapter 11 Trustee shall continue to be compensated at his hourly rate of $150 up to and including the Effective Date. The Chapter 11 Trustee shall file fee applications detailing the work performed consistent with the requirements of Title 11, prior to the approval and payment of such fees. The Liquidating Trustee shall be compensated at the hourly rate of $150 for all services provided to the Liquidating Trust. The Liquidating Trustee shall file fee applications detailing the work performed consistent with the requirements of Title 11, prior to the approval and payment of such fees. The aggregate amount of compensation to the Chapter 11 Trustee and the Liquidating Trustee of the Liquidation Trust shall not exceed the limitations set forth in 11 U.S.C. § 326.
>
> Section 6.2-Bar Date for Fee Claims
>
> > 6.2.1 Unless otherwise ordered by the Bankruptcy Court, all Fee Applications for final allowance of compensation and reimbursement of expenses,

---

[5] Unless otherwise noted, references to an FRBP or LBR refer to the version in effect at the time the subject fees were applied for and/or noticed to creditors. The LBRs have since been re-numbered and amended. The amendments are mainly non-material.

[6] If the notice was served by mail, parties had an extra 3 days to object. FRBP 9006(f).

> through and including the Confirmation Date, shall be filed within 30 days after the Confirmation Date. Any party seeking compensation or reimbursement with respect to a Fee Claim shall give all interested parties written notice of the estimated amount of such Fee Claim not later than thirty (30) days prior to the Confirmation Date. All such Fee Claims for which application is not timely filed shall be forever barred. Objections to such Fee Applications may be filed on or before 60 days after the Confirmation Date. The Bankruptcy Court shall retain jurisdiction to determine all such Fee Claims.
>
> 6.2.2 Notwithstanding the foregoing, for reasonable services rendered after the Confirmation Date, the Liquidating Trustee shall promptly pay any Professional Person retained by the Liquidating Trustee, upon submission of proper written invoices detailing the reasonable services rendered and expenses incurred for which compensation or reimbursement is sought and approval by the Bankruptcy Court following standard notice and hearing procedures.[7]

---

[7] The Plan's Glossary at § 10 provides in pertinent part:

"Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the legal docket maintained by the Office of the Clerk.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"Effective Date" means the first Business Day: 1) That is at least 45 days after the Confirmation Date; 2) On which all conditions to Confirmation and Effective Date have been met; and 3) on which no stay of the Confirmation Order is in effect.

"Fee Applications" mean applications of Professional Persons under Section 330, 331, or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in a Chapter 11 Case.

"Fee Claims" mean any Claims under Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

"Liquidation Trust" means the Lie H. Tan Liquidation Trust formed

Under the Plan, the Trust was essentially administered like a Chapter 7 estate. The key players remained the same. Mr. Short was named the Liquidating Trustee and MB and Mr. Dorman were retained as his counsel and accountant respectively. The Plan provided that the Liquidating Trustee's and his professionals' fees were subject to notice and court review. To facilitate that review, the Liquidating Trustee and his counsel used the same forms and procedures as were used pre-confirmation.[8] Also, under the Plan, § 330's standards for awarding compensation applied to post-confirmation fees.[9] In light of these circumstances, I can understand the objecting parties' position that this has been one long case beginning in 2004, with one estate and no "final" fee awards. While the Plan itself belies that analysis,[10] the verbiage in certain post-confirmation applications, reports, notices, and orders support it. It is my task to make some sense of this hodgepodge.

I now turn to the various fee applications and awards.

David Mills and Candace Amborn:

In October, 2004, David Mills applied for $10,980.00 in fees and $231.80 in expenses. In May, 2005, Candace Amborn applied for $5,200.00 in fees and $51.61 in expenses. Both applications were on LBF #345, as mandated by LBR 2016-1 and were clearly denominated as "final." In April, 2006, these applicants filed a joint request that their fees be paid as administrative expenses. In August, 2006, the applications were noticed to all parties in interest. The notice referenced the applicants, the applications on file, the amount of fees and expenses sought and that the fees were incurred in the Chapter 7 portion of the case. It gave parties in interest 22 days from its mailing date to object. No objections were filed and on September 25,

---

by confirmation of the Plan for the liquidation of Estate Assets following the Effective Date.

"Liquidation Trustee" means R. Kim Short.

"Professional Person" means any Person retained or to be compensated pursuant to Sections 326, 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

[8] In fact, the Liquidating Trustee's professionals in their supplemental fee applications, notices thereof, interim reports, and in some cases the supplemental fee orders themselves, were identified as working for the Chapter 11 Trustee. This also may have contributed to some confusion over which hat the parties were wearing.

[9] See, Letter Opinion entered October 24, 2007. That § 330's standards applied does not settle the issue of whether the awards were interim or final, as interim fees are subject to the same standards. See, § 331 (specifically incorporating § 330's standards).

[10] Plan §§ 4.3, 6.2.1 and 6.2.2 reinforce the ordinarily distinct line between pre and post-confirmation fees. Indeed, if a "final" application for pre-confirmation fees as referenced in § 6.2.1 was truly interim, the applicant's failure to timely file it, would not "forever bar" the subject fees, as a professional is ordinarily not <u>required</u> to apply for interim fees.

2006, an order was entered approving the applied-for fees. This was a final order on "final" fees and as such is not subject to review, nor are the awarded fees subject to disgorgement.

    BSHC:

On November 1, 2005, BSHC applied for interim compensation, seeking an award of $59,665.75 in fees (including a $7,500.00 retainer given post-petition) and $770.19 in expenses. The UST objected and after a stipulation, the firm was awarded and paid $40,548.25 in interim fees and $770.19 in interim expenses by order entered December 13, 2005. These amounts were in addition to the $7,500.00 retainer. On September 29, 2006, BSHC filed a final application for an additional $12,490.50 in fees and $370.20 in expenses.[11] The application was served on various parties including the Debtor and the UST. It was not however generally noticed for approval. Nevertheless, the UST objected. A hearing was set on the objection for January 25, 2007. Notice of that hearing was again mailed only to limited parties. BSHC moved to continue consideration of the final application until at least 6 months after the deadline for liquidation of assets under the Plan. The motion indicates the Liquidating Trustee, the UST and the Debtor supported a continuance. BSHC's motion was granted at the January 25th hearing. The firm's final application was not noticed to all parties in interest until the recently filed Final Report.[12] No order on BSHC's "final" fees has been entered. Debtor and Lie F. Tan have objected thereto and seek disgorgement of interim fees previously paid, along with the retainer.[13] That objection and request for disgorgement, as well as the UST's original objections, will be heard at a further evidentiary hearing, where all of BSHC's fees will be before the court for consideration.

    R. Kim Short:

Section 4.3 of the Plan sets Mr. Short's rate of compensation at $150/hour for services as both Chapter 11 and Liquidating Trustee, with the percentages upon distributions in § 326 as an aggregate cap. After several interim applications and awards, on September 29, 2006, Mr. Short applied for $128,812.50 in fees. This amount reflected his hours worked times his $150/hour

---

[11] These additional fees and expenses were incurred after the Chapter 11 Trustee's appointment. The application sought their allowance (as well as $2,304.00 in similarly incurred fees from the interim application) on a subordinated basis, to be paid after administrative expenses, priority claims and non-insider unsecured claims.

[12] The Final Report notes the firm's application is for $52,935.94 with $41,318.84 allowed and paid, with an unpaid balance of $11,617.50 and a proposal that said balance not be paid. The amounts listed do not include the $7,500.00 retainer or the additional $12,490.50 in fees and $370.20 in expenses sought (albeit on a subordinated basis) in the September 29, 2006, Final Application.

[13] BSHC's final application indicates it received $5,000.00 on August 17, 2004, and $2,500.00 on September 15, 2004, both from Debtor's post-petition personal service income. The firm's § 329(a) disclosure of compensation filed October 14, 2004, indicates these sums were "earned on receipt retainers." Even assuming *arguendo* the retainer was not estate property (see § 541(a)(6) excluding post-petition personal services income from the estate), BSHC's retention order entered December 20, 2004 (*nunc pro tunc* September 17, 2004), specifically provided that "all compensation, including non-refundable retainers" was subject to final court approval. (emphasis added). In any event, I may review any fees paid or to be paid from non-estate assets for reasonableness under § 329(b).

rate, plus $10,000.00 in estimated future fees. The application was noticed to all parties in interest on LBF #1190.[14] After objection by the UST and withdrawal of the future fee request, a stipulated order was entered on December 8, 2006, awarding $73,647.24 in fees. This was the maximum allowable under § 326 based on a percentage of funds disbursed to that point. The order provided that the $45,165.26 in remaining fees were disallowed without prejudice to use of the time represented thereby to support the reasonableness of any additional request for compensation under § 326 when further disbursements under the Plan supported same. Post confirmation, Mr. Short, acting as Liquidating Trustee, made further disbursements. These disbursements raised the § 326 cap and allowed him to request additional fees.

On February 15, 2007, notice went out to all parties in interest that Mr. Short was requesting an additional $15,068.98 based on his September 29, 2006, application and the December 8, 2006, order. No objections to the notice were filed. On March 26, 2007, an order was entered allowing the additional fees. On July 5, 2007, a similar notice went out requesting an additional $11,593.65 in fees. Debtor objected. On September 10-12, 2007, I conducted a lengthy evidentiary hearing, part of which concerned Mr. Short's fees. By order entered September 25, 2007, his additional fees were allowed as requested.

In determining which of Mr. Short's fee awards are now reviewable, my initial inquiry is whether the December 8, 2006, order was an order on "final" or "interim" fees. The order itself adopts the stipulation of the UST and Mr. Short which refers to the September 29, 2006, application as one for "final" compensation. Further and equally as important, examination of the application and the procedural context in which it was filed, indicates it was a "final," not "interim" application. It is entitled "Final" and ¶ 3 thereof references the total amount requested as "final" fees. The application's opening paragraph does recite it is for "interim" fees, however, I find this one reference immaterial, as the application elsewhere refers multiple times to final fees. Further, the fees applied for are through August 30, 2006, the date the Plan was confirmed. This followed the normal practice for final fees in Chapter 11, LBR 2016-1.D.2, as well as that contemplated by Plan § 6.2.1. Further, the application was filed as a proof of claim and docketed in the claims register, instead of the main case, which is consistent with a final application. LBR 2016-1.A.4. In that vein, the application was noticed on LBF #1190 which is used for noticing final fees. LBR 2016-1.D.4. I find the December 8th order as one on final fees. The $73,647.24 awarded therein is not now subject to review or disgorgement.

More problematic are the fees awarded pursuant to the March 26, 2007 and September 25, 2007, orders. The problem comes with the notices of the additional fees. The Bankruptcy Code requires notice as "appropriate in the particular circumstances." §§ 330(a) and 102(1)(A). Similarly, constitutional due process requires notice reasonably calculated, under all circumstances, to apprise a party of the pendency of an action and an opportunity to present objections. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865, __ (1950). The additional fees were noticed on LBF # 753.40 which is used for "interim" fees. Paragraph 3 thereof explicitly refers to the applications as ones for "interim" compensation.[15] This rendered the notices defective. Simply put, notices labeling fees as

---

[14] The LBF #1190 also noticed MB's and Mr. Dorman's final fees.

[15] Further, the notices were each accompanied by an "interim" report on LBF #1153, again a form used only for interim applications. LBR 2016-1.B.1.b. Paragraph #3 thereof recites the amount which

"interim" neither "appropriately," § 102(1)(A), nor "reasonably," Mullane, supra, apprise parties that final orders will be entered thereon. At the least they render the application process ambiguous (i.e. capable of more than one reasonable interpretation), which in this context must be construed against the applicant. C.f., Moore v. Fidelity Financial Services, Inc., 1997 WL 323822 (N.D. Ill. 1997) (defective notice of right of redemption construed against lender). As such, I find the combined $26,662.63 awarded Mr. Short post-confirmation is an "interim" award, subject to review and if appropriate, disgorgement.[16]

MB and Earl Dorman:

After several interim applications and awards, on September 29, 2006, MB applied for $222,424.50 in fees (including $15,000 in future fees) and $8,957.45 in expenses for all services through August 30, 2006, in an application entitled "final" and referencing "final" fees therein. The application was noticed on LBF #1190. No objections were filed. Per a stipulation between MB and the UST, the request for future fees was withdrawn, and the firm was awarded $204,881.95 by order entered December 8, 2006. The order adopted the stipulation that the compensation was "final." Post-confirmation the firm filed three "supplemental" applications for "final" compensation. Each supplemental application identifies MB as "attorney for Chapter 11 Trustee" and lists all prior compensation requests and awards both pre and post-confirmation. The first two supplemental applications were preceded by the same interim reports, and were noticed on the same form as Mr. Short's two additional requests discussed above.

MB filed the first supplemental application on February 15, 2007, for $15,031.25 in fees and $661.40 in expenses. No objections were filed and by order entered March 26, 2007, the firm was awarded the applied-for fees, with the orders noting the application as one for "supplemental . . . final compensation." The firm filed its second supplemental application on July 5, 2007, for $7,584.00 in fees and $876.80 in expenses. Debtor objected. I conducted an extensive hearing on September 10-12, 2007. By letter opinion and order entered October 24, 2007, I awarded the firm $6,213.00 in fees and $876.80 in costs. The last application, filed on November 3, 2008, and entitled "Third and Final Supplemental Application for Final Compensation" requests allowance of $253,856.96 in fees and $14,344.78 in expenses. These figures represent the total fees and expenses theretofore allowed (as opposed to applied-for) plus $36,438.25 in fees and $4,099.09 in expenses incurred since June 25, 2007. This last application was noticed in the Final Report.

On September 29, 2006, Mr. Dorman applied for $17,362.50 in fees (including $15,000.00 in future fees) in an application entitled "final" and referring to "final" compensation therein. The UST objected and a stipulated order was entered on December 8, 2006,

---

could be disbursed as "interim" compensation without jeopardizing the estate's viability.

[16] To the extent the March 26th and September 25th orders could be construed as ones on "final" fees, FRCP 60 (made applicable by FRBP 9024) allows relief. A judgment is void under FRCP 60(b)(4) if the court acted in a manner inconsistent with due process. Owens-Corning Fiberglas Co. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.), 759 F.2d 1440,1448 (9th Cir. 1985). There is no time limit for a Rule 60(b)(4) motion. U.S. v. Levoy et. al. (In re Levoy), 182 B.R. 827, 835 (9th Cir. B.A.P. 1995).

withdrawing the future fee request without prejudice and awarding $2,362.50 in final compensation. Post- confirmation, Mr. Dorman filed two "supplemental" applications for "final" compensation. Each supplemental application identifies Mr. Dorman as performing services on behalf of the Chapter 11 Trustee and lists all prior compensation requests and awards, both pre and post-confirmation. The first application was preceded by and noticed on the same respective LBFs ## 1153 and 753.40 as the MB and Short applications discussed above. It was filed on February 15, 2007 and requested fees of $3,675.00 for preparation of 2005 estate tax returns and compilation of data for filing the 2006 estate tax returns. No objections were filed and by order entered March 26, 2007, Mr. Dorman was awarded the applied-for fees. The next application, filed November 3, 2008, was entitled "Second and Final Supplemental Application for Final Compensation." It requested fees of $3,937.50 for preparation of the 2006-2008 estate tax returns. Like MB, this application was noticed in the Final Report.[17]

For the reasons expressed above as to Mr. Short, the December 8, 2006, stipulated orders on MB and Mr. Dorman's final fee applications are final orders, may not be reviewed, and the fees awarded therein are not subject to disgorgement. It is equally clear the new fees applied for in MB's and Mr. Dorman's respective Third Final ($36,438.25 in fees, $4,099.09 in expenses) and Second Final ($3,937.50 in fees) Supplemental Final Applications have not been passed on and will therefore be considered at the future evidentiary hearing. Again, it is the supplemental applications on which orders have already been entered which require close scrutiny.

These supplemental applications were labeled ones for "final compensation." I reject Debtor's argument that this label was intended to trick parties into believing the subject fees would be the last applied for, so as to induce parties not to object. Likewise, I reject the Jacobs' argument, made for the first time at the February 5, 2009 hearing (without citation to case authority), that I should use § 105(a) to modify or set aside the supplemental fee orders because of alleged confusion caused by the word "final." The record is clear that when all but the last supplemental applications were filed, the Liquidating Trustee was far from completing administration of the Trust. It was obvious there was much work to do and equally obvious MB and Mr. Dorman did not intend to do it for free. In this context, no reasonable party could have construed the term "final compensation" as "last application for compensation"[18] Section 6.2.2 of the Plan merely required "approval by the Bankruptcy Court [of fees incurred by the Liquidating Trustee's professionals] following standard notice and hearing procedures." It does not define the term "standard notice and hearing procedures," and no objecting party has argued (at least in any particularized way) that the Plan proscribed serial supplemental applications which anticipated final (as opposed to interim) orders. I find the term "final compensation" was used in the supplemental applications as a term of art to distinguish it from "interim compensation" which would have been subject to review at the case's end. However, for the reasons discussed above with regard to Mr. Short's additional fees, the notices thereof were

---

[17] The Final Report proposes to subordinate MB's fees to Mr. Dorman's.

[18] In contrast, the true "last" supplemental fee applications were appropriately labeled "Second" (Dorman), and "Third" (MB) "And <u>Final</u> Supplemental Application for Final Compensation."

March 20, 2009
Page-11

defective which at the least rendered the applications ambiguous.[19] Thus the applications and the fees awarded thereon were "interim."[20]

       Conclusion:

       Fees awarded to David Mills, Candace Amborn and the allowed administrative claim of Lie F. Tan are not subject to review or disgorgement. The fees awarded in the December 8, 2006, orders to MB and Messrs Short and Dorman are also not subject to review or disgorgement. All other fees are subject to review and disgorgement. I construe the Debtor's and Lie F Tan's submissions as objecting to all reviewable fees. I construe the Jacobs' objection as limited to only MB's and Mr. Short's fees. The objection refers to no other administrative claimant by name.[21] As noted above, in September, 2007, I conducted a lengthy hearing on Mr. Short and MB's second supplemental fee requests. As such, the parties are admonished not to present cumulative evidence at the evidentiary hearing. The parties will receive separate notice of that hearing.[22] The above constitute my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

                                      Very truly yours,

                                      */s/ Albert E. Radcliffe*

                                      Albert E. Radcliffe
                                      Bankruptcy Judge

AER:vhd

---

[19] A party receiving LBF #753.40 (accompanied by LBF #1153) could have reasonably concluded MB and Mr. Dorman were seeking compensation from the Trust on an interim basis, subject to a final award when the Trust was ready to terminate.

[20] In her Reply Memorandum, Debtor asserts in conclusory fashion that she did not get all notices of the subject fee applications. While this likewise raises deficient notice/due process concerns, at the February 5, 2009, hearing Debtor did not clarify what notices she failed to receive. I thus consider this "no notice" ground waived.

[21] I do not construe the Jacobs' request that I order disgorgement to allow "a reasonable distribution to the unsecured creditors" or that I conduct an "independent [fee] review," as sufficiently detailed to put either BSHC or Mr. Dorman on notice of objections to their fees.

[22] Notwithstanding my conclusions as to what fees are now non-reviewable, there is one scenario which may expose any or all of the previously paid administrative claimants to disgorgement. The Final Report indicates no unpaid tax liability of the Chapter 11 estate or the Trust. However, Debtor in her Supplemental Brief disputes this and attaches as Exhibit 4 an IRS notice of proposed income tax assessment dated December 29, 2008. The proposed assessment is against Debtor personally for tax, interest and penalties for 2006. It appears to include assessments relating to estate assets sold. In light thereof, I will receive evidence at the evidentiary hearing on whether the Chapter 11 estate or the Trust has any unpaid tax liability. If liability exists with insufficient estate funds to pay it, then disgorgement on that basis may be appropriate from any of the prior paid administrative claimants. As an aside, if Debtor feels she is improperly being personally assessed, she must take that matter up with the IRS, and file any appropriate objections to the assessment. That matter will not be taken up within the context of the present objection to the Final Report.